# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 11-CV-5140 (JFB)(AKT)

BROADCAST MUSIC, INC.; FOX-GIMBEL PRODUCTIONS, INC.; ROADALI MUSIC; COMBINE MUSIC CORP.; SCREEN GEMS-EMI MUSIC, INC.; ADULT MUSIC; UNIVERSAL–SONGS OF POLYGRAM INTERNATIONAL, INC.; FUEL PUBLISHING, INC. D/B/A PENER PIG PUBLISHING; SONY/ATV SONGS LLC; AND FALLOUT BOY, INC. D/B/A CHICAGO X SOFTCORE SONGS

Plaintiffs,

VERSUS

JJ SQUARED CORP., D/B/A K.J. FARRELL'S BAR & GRILL; KEVIN SHEEHAN; AND JOSEPH RAMA,

Defendants.

**MEMORANDUM AND ORDER**
December 26, 2013

JOSEPH F. BIANCO, District Judge:

Plaintiff Broadcast Music, Inc. ("BMI") brings this copyright infringement action against defendants JJ Squared Corporation, d/b/a K.J. Farrell's Bar & Grill ("JJ Squared"); Kevin Sheehan ("Sheehan"); and Joseph Rama ("Rama") (collectively, "defendants") pursuant to the United States Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq.* BMI has the authority to license the public performance rights of approximately 6.5 million copyrighted musical compositions. The other plaintiffs—Fox-Gimbel Productions, Inc.; Roadali Music; Combine Music Corp.; Screen Gems-EMI Music, Inc.; Adult Music; Universal–Songs of Polygram International, Inc.; Fuel Publishing, Inc. d/b/a Pener Pig Publishing; Sony/ATV Songs LLC; and Fallout Boy, Inc. d/b/a Chicago X Softcore Songs—own the copyrights to the musical compositions that allegedly were publicly performed without authorization from BMI at K.J. Farrell's Bar & Grill ("the Establishment").

The parties cross-move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court (1) grants plaintiffs' motion as to JJ Squared and Sheehan as to liability, but denies the motion as to damages; and (2) denies the motion as to defendant Rama. The Court denies defendants' motion in its entirety.

I.     BACKGROUND

A.     Factual Background[1]

BMI enters into agreements with the copyright owners of musical compositions to acquire non-exclusive public performance rights. (Lloyd Decl. ¶ 2.) BMI has the performance rights for the works at issue: "Hemorrhage," "Killing Me Softly With His Song," "Me and Bobby McGee," "Sugar We're Going Down," and "Surrender"[2] (collectively, "the Works"). (*Id.* ¶¶ 2, 4–5; *see* Copyright Documentation, Lloyd Decl. Ex. A.) BMI, in turn, licenses the right to perform publicly such compositions through "blanket license agreements." (Lloyd Decl. ¶¶ 2, 3.) According to BMI's Assistant Vice President of General Licensing, BMI routinely mails license agreements and information about copyright laws to establishments where music is performed. (Stevens Decl. ¶ 2; *see generally* Correspondence, Stevens Decl. Ex. B.) Licensing personnel also telephone and visit potential licensees. (Stevens Decl. ¶ 7.)

JJ Squared operates, maintains, and controls the Establishment, which regularly hosts live music and karaoke, and has a jukebox. (Answer ¶ 2; Response to Request for Admissions ("RRA") ¶¶ 2–3; Sheehan Dep. at 42–50.) The Establishment has a licensing agreement with ASCAP. (Rama Dep. at 42:3–17.) Sheehan, the president of JJ Squared, has "the right and ability to supervise the activities of" JJ Squared and a "direct financial interest" in the corporation. (Answer ¶ 2; RRA ¶ 5; Shareholders Agreement, Clayton Decl. Ex. C, at 1; Sheehan Dep. at 10.) He has operated and managed the Establishment since at least early 2011. (*See* Answer ¶ 2; Sheehan Dep. at 10, 20–22.) According to the Shareholders Agreement, Rama is an officer of record of JJ Squared, and he operated and managed the Establishment until early 2011. (*See* Shareholders Agreement; Rama Dep. at 17, 29–34, 56–59; Sheehan Dep. at 20–22). According to Sheehan, however, Rama was only a manager because he never paid the $40,000 capital contribution that was a prerequisite to the ownership interest. (RRA ¶¶ 8, 11; Sheehan Dep. at 10, 23.) Plaintiffs concede there is a fact dispute regarding Rama's financial interest. (Pl. Reply, at 7.)

BMI first contacted Rama and the Establishment on January 6, 2010, after learning that it did not have the requisite license.[3] (Stevens Decl. ¶ 3.) The January 6 Letter explained the restrictions on public performances of copyrighted music, provided information about BMI's business,

---

[1] The Court takes the following facts from the parties' affidavits, declarations, and exhibits attached thereto. Unless otherwise noted, each fact is undisputed or the opposing party has not pointed to any contradictory evidence in the record. As to each cross-motion, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). The Court notes that plaintiffs present their Rule 56.1 Statement of Facts in their brief and incorporate the declarations of Catherine Clayton ("Clayton), Hope Lloyd ("Lloyd"), and Lawrence Stevens ("Stevens"). Defendants did not submit a brief in opposition to summary judgment and in support of their cross-motion for summary judgment; instead, they submit defense counsel's "Affirmation in Opposition to Motion for Summary Judgment and in Support of Cross Motion for Summary Judgment" ("Def. Affirmation") (Docket No. 33). In its discretion, the Court will take into account all factual assertions supported by evidence in the record. The parties shall ensure compliance with the Local Rules in the future.

[2] The Court has reviewed the registration certificates and documents relating to the chain of ownership. Defendants do not dispute the certificates, chains of ownership, or BMI's authority to license these works.

[3] Except for the performances on June 9, 2011, there is no evidence in the record about which copyrighted works were played, when they were played, who played them, or how frequently they were played.

and enclosed a license agreement. (January 6 Letter, at BMI 00105.) BMI sent additional letters to Rama—none of which were responded to—on February 12, March 15, April 1, April 13, June 8, July 14, August 18, September 27, October 6, October 28, November 17, and December 20, 2010. (Stevens Decl. ¶ 5; Correspondence List, Stevens Decl. Ex. B, at BMI 00104.) The April 1 Letter indicated that Rama had spoken with a BMI representative regarding licensing and requested proof of BMI's authority to act on behalf of songwriters and composers. (April 1 Letter, at BMI 00108.) The June 8 Letter again referenced the "numerous attempts to contact [Rama] concerning [his] rights and [responsibilities] as someone who plays BMI copyrighted music in a business." (June 8 Letter, at BMI 00110.) The November 17 Letter from Stevens emphasized that BMI had been attempting to contact Rama "for some time regarding the necessity of signing a BMI Music License for" the Establishment; that BMI's attempts have been unsuccessful; that the music usage fee for 2010 is $1,303.50; and that "[c]opyright infringement is a serious offense." (November 17 Letter, at BMI 00119.) The December 20 Letter, sent via FedEx by an attorney, gave notice that if a license was not completed the Establishment must discontinue the public performance of any BMI-licensed music or risk damages. (December 20 Letter, at BMI 00120.) On January 10, 2011, Stevens sent Rama a letter via FedEx instructing the Establishment to cease performing BMI-licensed music. (Stevens Decl. ¶ 6; January 10 Letter, at BMI 00122.) The package was delivered on January 13. (January 19 Proof of Delivery, at BMI 00123.) BMI sent additional letters on March 11, March 22, and May 23, 2011. (Stevens Decl. ¶ 6.) The March 11 Letter to Sheehan stated that "BMI has been contacting your business in an attempt to provide you with the necessary permission to perform copyright controlled music in your business" and it included a copy of the December 2010 notice. (March 11 Letter, at BMI 00124.) The letter was delivered on March 15. (March 15 Proof of Delivery, at BMI 00125.) According to Stevens, licensing personnel called the Establishment on sixty-three occasions. (*Id.* ¶ 8.)

The Establishment never responded to BMI, and it has no license from BMI. (Stevens Decl. ¶ 4.) Sheehan and Rama claim they never received any correspondence from BMI and never heard of BMI before the lawsuit. (Rama Decl. ¶¶ 7, 9; Sheehan Decl. ¶ 7.) According to Rama, he would open bills from the Establishment's vendors, "but with the volume of junk mail . . . daily [he] would not simply open every piece of mail that came regardless to whom it was addressed." (Rama Decl. ¶ 8.)

On June 9, 2011, a BMI representative, Nathan Donchez, visited the Establishment. (Stevens Decl. ¶ 11.) Donchez's Certified Infringement Report detailed the venue, stated that music was played from an iPod and by a band, and documented the songs played. (Certified Infringement Report, Stevens Decl. Ex. A, at BMI 00141–46.) There was no admission charge. (*Id.* at BMI 00141.) Donchez also digitally recorded the music and submitted it to BMI's General Licensing Department. (Certification of Nathan Donchez, Stevens Decl. Ex. A, at BMI 00147.) BMI authorized Performance Identification Employee Lisa Brammer to review the report and identify the recorded musical works. (Stevens Decl. ¶ 12; Brammer Decl., Stevens Decl. Ex. A, at BMI 00148.) Brammer identified the Works. (Stevens Decl. ¶ 12; Identified Songs, Stevens Decl. Ex. A, at BMI 00150–51.) On June 10, 2011, BMI sent the Establishment a letter advising it of the investigation. (*Id.* ¶

3

Case 2:11-cv-05140-JFB-AKT   Document 43   Filed 12/26/13   Page 4 of 11 PageID #: 458

13; June 10 Letter, at BMI 00128.) BMI never received a response. (Stevens Decl. ¶ 13.) On June 20, 2011, BMI advised Sheehan that the matter was referred to attorneys, but BMI received no response. (June 20 Letter, at BMI 00130.)

Sheehan and Rama do not dispute that BMI-controlled music was performed on June 9, 2011. They contend, however, that they never pay the bands and never profit from the performances because "[a]ny cover would go directly to [the bands]." (Sheehan Decl. ¶ 8.) Sheehan also claims that they never tell bands what to play. (*Id.* ¶ 9.)

### B. Procedural Background

Plaintiffs filed the complaint on October 21, 2011. Defendants answered on April 13, 2012. Plaintiffs moved for summary judgment on March 5, 2013. Defendants opposed and cross-moved for summary judgment on April 3, 2013. Plaintiffs opposed and replied on May 3, 2013. Defendants replied on May 16, 2013. The Court held oral argument on June 5, 2013.

### II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)).

4

Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III.   DISCUSSION

#### A.   Copyright Infringement

Plaintiffs allege that defendants infringed plaintiffs' copyrights by allowing the public performance of the Works at the Establishment without authorization. The owner of a copyright has the exclusive right to perform, or to authorize others to perform, the copyrighted work. 17 U.S.C. § 106(4). Any person who violates this exclusive right is an infringer. *Id.* § 501(a); *see Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 659 (S.D.N.Y. 1996) [hereinafter *R Bar*] (citing *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) [hereinafter *Shapiro I*]) ("[P]erformances, made without a license or authorization from the copyright owners, constitute copyright infringements in the works."). To prove a copyright infringement claim based on an unauthorized public performance, the plaintiff must establish (1) originality and authorship of the copyrighted work; (2) compliance with the formalities of the Copyright Act; (3) ownership of the copyrights involved; (4) the defendant's public performance of the composition for profit; and (5) lack of authorization for the public performance. *Broad. Music, Inc. v. 315 West 44th St. Rest. Corp.*, 93 Civ. 8082 (MBM), 1995 WL 408399, at *2 (S.D.N.Y. July 11, 1995) [hereinafter *315 West 44th St.*] (citations omitted); *Shapiro, Bernstein & Co., Inc. v. Club Lorelei, Inc.*, No. 93–CV–0439E(M), 1995 WL 129011, at *2 (W.D.N.Y. Mar. 14, 1995) [hereinafter *Shapiro II*] (citations omitted).

Defendants offer no evidence to place in dispute that plaintiffs have satisfied the first, second, third, and fifth elements. The declaration of BMI's Assistant Vice President, Hope Lloyd, and the attached documents, establish originally and authorship, compliance with the formalities of the Copyright Act, ownership, and BMI's right to license the works.[4] It also is undisputed that the Establishment had no permission to perform BMI-controlled music in 2010–2012. Further, Donchez's report and Brammer's review—certified under 28 U.S.C. § 1746—establish that the five songs were publicly performed at K.J. Farrell's on June 9, 2011. *See, e.g.*, *Broad. Music, Inc. v. Haibo, Inc.*, No. 10-CV-240S, 2012 WL 843424, at *2 (W.D.N.Y. Mar. 12, 2012) [hereinafter *Haibo*] (relying on certifications to establish public performance element). Thus, defendants' uncontroverted evidence clearly satisfies those elements. The only remaining questions, therefore, are whether the performance was "for profit" and whether the defendants are jointly and severally liable for copyright infringement.

1.   JJ Squared's and Sheehan's Liability

It is well-settled that "[a]ll corporations and persons who 'participate in, exercise control over, or benefit from' a copyright infringement are jointly and severally liable as copyright infringers." *315 West 44th St.*, 1995 WL 408399, at *4 (quoting *Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985); *Shapiro I*, 316 F.2d at 308–09); *see also Broad.*

---

[4] A copyright registration "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see also Gund, Inc. v. Applause, Inc.*, 809 F. Supp. 304, 307 (S.D.N.Y. 1993) (citations omitted).

5

*Music, Inc. v. DFK Entm't, LLC*, No. 1:10-cv-1393 (GLS/DRH), 2012 WL 893470, at *3 (N.D.N.Y. Mar. 15, 2012) [hereinafter *DFK Entm't*] (citing cases). Specifically, an individual who knows or has "reason to know of the direct infringement," and "engages in 'personal conduct that encourages or assists the infringement,'" will be liable for contributory infringement. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (citing *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019–20 (9th Cir. 2001)) (internal quotation marks omitted). Vicarious infringement, on the other hand, does not require proof of knowledge. *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Instead, an individual is jointly and severally liable as a vicarious infringer "if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Id.* Thus, "[a] proprietor is liable under the Copyright Act for the copyright infringement of musicians whom the proprietor allows to perform in his establishment, even if the proprietor tells the musicians not to play protected works, or is unaware that the songs performed were copyrighted." *315 West 44th St.*, 1995 WL 408399, at *4 (citations omitted).

As a threshold matter, defendants contend that the "for profit" requirement cannot be met and they should be exempt from liability pursuant to 17 U.S.C. § 110(4) because the band received no remuneration on June 9, 2011.[5] (Def. Affirmation ¶¶ 13–15.) The Court disagrees. First, despite the lack of a cover charge, no reasonable factfinder could conclude that the band performed "with no expectation of profit." *In re Cellco P'ship*, 663 F. Supp. 2d 363, 375 (S.D.N.Y. 2009) (discussing § 110(4) exemption). Second, "[a]s long as [JJ Squared] was established as a profit-making enterprise, and some nexus may be found between the performances and the general business of [JJ Squared], the 'for profit' requirement is satisfied." *315 West 44th St.*, 1995 WL 408399, at *3 (citing *Herbert v. Shanley Co.*, 242 U.S. 591, 595 (1917)); *accord Herbert*, 242 U.S. at 595 ("Whether . . . [music] pays or not the purpose of employing it is profit and that is enough."); *Shapiro I*, 316 F.2d at 307 ("[T]he cases are legion which hold the dance hall proprietor liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income."); *Major Bob Music v. Stubbs*, 851 F. Supp. 475, 579–80 (S.D. Ga. 1994) (rejecting bar's § 110(4) defense because bar was "profit-making enterprise" that could control performance of music at bar). It is apparent that JJ Squared is a profit-making exercise and that it financially benefited from these performances, which "furthered [its] general business to provide entertainment and refreshments to the public." *315 West 44th St.*, 1995 WL 408399, at *3. Therefore, the "for profit" element is met.

Thus, because JJ Squared is a profit-making enterprise, owns and operates the Establishment, has the right and ability to control the Establishment's activities, and has a direct financial interest in these activities (*see, e.g.*, Answer ¶2; RRA ¶¶ 2–3), the Court concludes that JJ Squared is jointly and severally liable for the copyright infringement on June 9, 2011. Indeed, to

---

[5] 17 U.S.C. § 110(4) provides that there is no copyright infringement for, *inter alia*, "performance of a nondramatic literary or musical work otherwise than in a transmission to the public, without any purpose of direct or indirect commercial advantage and without payment of any fee or other compensation for the performance to any of its performers, promoters, or organizers, if -- (A) there is no direct or indirect admission charge."

6

hold otherwise would encourage entities to "creat[e] a buffer against liability while reaping the proceeds of infringement." *Shapiro I*, 316 F.2d at 309; *DFK Entm't*, 2012 WL 893470, at *3 (holding corporate defendant contributorily liable because it owned and operated establishment, and profited from and had right to control club's activities). Sheehan is individually liable because he is an officer of JJ Squared, has the right and ability to supervise the Establishment's activities, and has a direct financial interest in those activities. *See 315 West 44th St.*, 1995 WL 408399, at *4; *Capitol Records, Inc. v. Wings Digital Corp.,* 218 F. Supp. 2d 280, 285 (E.D.N.Y. 2002) (finding that defendant could be vicariously liable where he "was the sole shareholder who managed and financially benefitted from the production and sale of the acts of copyright infringements"). Accordingly, the Court grants plaintiffs' motion for summary judgment as to JJ Squared and Sheehan. For the same reasons, defendants' cross-motion is denied.[6]

2.  Rama's Liability

Although plaintiffs concede there are genuine disputes of material fact as to Rama's vicarious liability, they argue that Rama is liable for contributory infringement because he was willfully blind to BMI's correspondence and "put the infringement in motion by establishing K.J. Farrell's infringing practices of performing unauthorized and infringing music, and those practices were kept in place after he left the business." (Pl. Reply, at 8.)

A party is liable for contributory infringement if, "with knowledge of the infringing activity," it "induces, causes, or materially contributes to the infringing conduct of another." *Gershwin*, 443 F.2d at 1162. "The requisite knowledge for contributory infringement liability may be actual or constructive." *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 154 (S.D.N.Y. 2009) (citations omitted). Thus, reckless disregard or "[t]urning a 'blind eye' to infringement" may constitute knowledge and may be inferred from the defendant's conduct. *Id.*; *see Knitwaves, Inc. v. Lollytogs, Ltd., Inc.*, 71 F.3d 996, 1010 (2d Cir. 1995) (stating that constructive knowledge or reckless disregard is sufficient and may be inferred from defendant's conduct). With respect to the "material contribution" prong, "the alleged contributory infringer must have made more than a mere quantitative contribution to the primary infringement: in other words, the participation or contribution must be substantial." *Arista Records*, 633 F. Supp. 2d at 155 (quoting *Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 473 (S.D.N.Y. 2002), *aff'd sub nom. Faulkner v. Nat'l Geographic Enters.*, 409 F.3d 26 (2d Cir. 2005)). "This requirement has been found to be met where a defendant provides the site and facilities or the environment and market for infringing activity." *Id.* (internal quotation marks and citations omitted).

Plaintiffs may be correct that Rama was willfully blind to the need for a license and the potential for infringement. However, in 2010, BMI never notified the Establishment that it actually infringed any copyrights. Instead, BMI encouraged the Establishment to procure a license to avoid the potential for infringement. Plaintiffs proffer no evidence of infringement other than on June 9, 2011—approximately six months after Rama left the Establishment. Thus, although Rama may have been on notice about the

---

[6] Because the Court holds that JJ Squared and Sheehan are vicariously liable, there is no need to consider whether these defendants are contributory infringers based on a "willful blindness" theory.

7

benefits of a BMI license, a reasonable factfinder could conclude that Rama is not contributorily liable because BMI sent the 2010 letters as part of its routine practice, and that there was no direct infringement until June 2011. Plaintiffs cite to no authority that compels the conclusion that Rama is liable for the events that occurred months after he left JJ Squared. In short, there are disputed issues of fact as to the extent of Rama's involvement with JJ Squared at the time of the infringement that preclude summary judgment on plaintiffs' infringement claim as to Rama. Similarly, although Rama moves for summary judgment because it is undisputed that he was not employed by JJ Squared at the time of the infringement, plaintiffs have put forth evidence that raises a material issue of fact as to whether his involvement with JJ Squared makes him liable for contributory infringement notwithstanding such lack of employment at the time of the infringement. Accordingly, the Court denies the cross-motions for summary judgment as to Rama.

### B. Relief Requested

To remedy the infringement, BMI seeks $25,000 in statutory damages ($5,000 for each act of infringement), injunctive relief, and attorneys' fees and costs. As set forth below, the Court concludes that there are disputed issues of fact as to willfulness with respect to JJ Squared and Sheehan that preclude summary judgment with respect to the issues of statutory damages and injunctive relief. The Court also denies plaintiff's request for attorneys' fees and costs without prejudice to renewing that application once the remaining legal issues in the case are resolved.

#### 1. Damages

In lieu of actual damages under the Copyright Act, a plaintiff may receive an award of statutory damages "in a sum of not less than $750 or more than $30,000" per infringement. 17 U.S.C. § 504(c)(1). If the infringement was willful, the court may enhance the statutory damages award to as much as $150,000 per infringed work. *Id.* § 504(c)(2). Willfulness can be established through proof that the infringer "had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." *Twin Peaks Prods., Inc. v. Publ'n Int'l, Ltd.,* 996 F.2d 1366, 1382 (2d Cir. 1993); *see Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263–64 (2d Cir. 2005) (willful blindness to copyright holder's rights sufficient to prove willfulness). Damages may be as low as $200 per infringement if the infringement was "innocent." 17 U.S.C. § 504(c)(2). Within these limits, the Copyright Act affords courts "wide discretion." *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986). In exercising their discretion in awarding statutory damages for the infringing conduct, court may consider "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods., Inc.,* 603 F.3d 135, 144 (2d Cir. 2010).

BMI seeks $5,000 per infringement. Defendants argue that the Court should award a maximum of $750 per violation because they were not aware of any infringement or of BMI itself.

On the issue of willfulness, plaintiffs have provided evidence that they sent the Establishment, Rama, and Sheehan several letters through mid-2011, made numerous

telephone calls, and visited in person in order to execute a license agreement and avoid copyright infringement. JJ Squared and Sheehan, however, never responded to BMI's correspondence. Plaintiffs also point to the Establishment's agreement with ASCAP to demonstrate its awareness of licensing requirements and copyright law.

Defendants, however, contest plaintiff's argument that the copyright violations were willful, and defendants have provided sworn statements to support their position. In particular, Sheehan submitted an affidavit in which he states, among other things, the following on the issue of intent:

> Frankly I never heard of BMI until this lawsuit was commenced. The bar through Mr. Rama signed an agreement with ASCAP for live performances. We would have done so with BMI is [sic] we knew of their existence. As difficult [sic] it is to believe I never received either written or verbal correspondence from their representatives. I never spoke to anyone from BMI and certainly never met with anyone from BMI. A license to play live music from them would cost roughly $1,900.00 certainly a lot less than what this lawsuit is costing me.

(Sheehan Aff. ¶ 7.) Sheehan also states that he "relied totally on Mr. Rama to run the place in its entirety." (*Id*. ¶ 5.)

Similarly, Rama submitted an affidavit in which he states, among other things, the following on the issue of intent:

> As I stated in my deposition, I don't recall receiving any mail or telephone calls from BMI. I did receive a visit from someone from ASCAP and we signed a licensing agreement with that company. It may sound incredulous but the bar business is so hectic that you busy yourself with items that need your immediate attention such as, ordering liquor, food, staffing and paying bills. You knew who your vendors were so you opened their bills but with the volume of junk mail a business gets daily I would not simply open every piece of mail that came regardless to whom it was addressed. I don't want to tell BMI how to conduct their business but an in person visit say in the late afternoon would have accomplished what all those alleged telephone calls and letters did not, that is, to speak to someone in charge about their licensing agreement. This is what their competitor ASCAP did and we signed an agreement with them. To tell you the truth I never heard of BMI before this lawsuit was commenced.

(Rama Aff. ¶¶ 7–9.)

These sworn statements from the individual defendants are more than sufficient to raise a disputed issue of fact as to willfulness in this particular case that precludes summary judgment on the issues of damages. Plaintiffs seek to avoid this factual dispute by having the Court conclude that, at a minimum, defendants were willfully blind as to the copyright violation. As a threshold matter, the Court notes that the evidence of infringement in this case relates to only one night—namely, June 9, 2011. Moreover, as to plaintiffs' summary judgment, the Court must view the evidence in the light most favorable to defendants (including all reasonable inferences to be drawn from the evidence). Under the applicable standard, these issues of intent, including the issue of willful blindness,

9

cannot be resolved on summary judgment in this case.

This Court's conclusion is consistent with the guidance from the Second Circuit in this context. For example, in *Island Software & Computer, Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005), the Second Circuit rejected Microsoft's effort to have the "willful blindness" issue resolved as a matter of summary judgment in that case:

> Microsoft asserts that, taken together, this evidence constitutes conclusive proof that, as a matter of law, [defendant] acted with "reckless disregard" for, and "willfull blindness" to, Microsoft's rights. We do not disagree with Microsoft that some of [defendant's] statements suggest that [the defendant company] failed to take reasonable steps to prevent the distribution of counterfeit software. But at this stage of the proceedings, where we must draw all inferences in favor of the non-moving party, we cannot say that, as a matter of law, [the defendant company] on the question of willfulness.
>
> A jury could, without doubt, conclude that defendant's statements reveal willful blindness, or establish a pattern of conduct so unreasonable as to constitute reckless disregard. Still, it is not beyond peradventure that a reasonable jury would conclude otherwise. And that is enough to make summary judgment on the issue of willfulness inappropriate.

*Id*. at 263–64. The court further noted that, although the circumstantial evidence of willfulness was "strong," summary judgment on that issue was still unwarranted. *Id*. at 264 ("Thus, even in a case like the one before us, where the non-moving party does not traverse the evidence suggesting constructive knowledge of infringement, but only disputes the inferences to be drawn from that evidence, our standard of review requires that we decide in favor of the non-moving party."). Finally, the court noted that, even though the award was within the amount authorized by the statutory scheme *even without a finding of willfulness*, the case should be remanded because the willfulness issue could have impacted the court's exercise of its discretion within the statutory range. *Id*. at 264–65.

In sum, although plaintiffs have proffered substantial circumstantial proof on the issue of willfulness, that issue cannot be resolved on summary judgment in light of defendants' sworn statements and other evidence in the record, including the fact that the evidence of infringement relates to one day and the fact that defendants had an agreement with ASCAP. Thus, the disputed issues of fact on willfulness preclude summary judgment on the issue of monetary relief.[7] Accordingly, the cross-motions for summary judgment on the issue of damages are denied.[8]

---

[7] The Court recognizes that the finding of willfulness is not always dispositive as to the relief the Court is awarding and, thus, summary judgment could be appropriate in certain cases even where that issue is unresolved. *See Island Software,* 413 F.3d at 265 ("In vacating this portion of the district court's judgment, we emphasize, however, that the court's reliance on a finding of willfulness was unnecessary to the relief it awarded."). However, given the substantial damages being sought in this case by plaintiffs, the issue of willfulness is certainly material to the Court's exercise of its discretion as to the amount of damages that should be awarded in this case.

[8] Given that the disputed issues of fact on willfulness could impact the request for a permanent injunction, the Court also declines to award that relief as a matter

10

IV.     CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is granted in part and denied in part, and defendants' cross-motion for summary judgment is denied in its entirety. Specifically, the Court holds that JJ Squared and Sheehan are jointly and severally liable for copyright infringement. However, genuine disputes of material fact preclude summary judgment with respect to Rama's liability and the requested relief. Plaintiffs may renew their application for relief and for attorneys' fees and costs after the resolution of the aforementioned factual issues.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: December 26, 2013
       Central Islip, NY

\*\*\*

Plaintiffs are represented by Catherine M. Clayton of Gibbons P.C., One Penn Plaza, 37th Floor, New York, NY, 10119. Defendants are represented by Robert Giusti of Robert Giusti, Esq. & Associates, PLLC, 42-40 Bell Blvd., Suite 601, Bayside, New York 11361.

---

of summary judgment. Similarly, because the case is proceeding, the request for attorney's fees and costs is denied without prejudice to renewal once the remainder of the case has been resolved.